2006-NMCA-032

131 P.3d 76

Frank TALAMANTE, Petitioner–Appellant,

v.

PUBLIC EMPLOYEES RETIREMENT BOARD, Respondent–Appellee.

No. 24,024.

Court of Appeals of New Mexico.

Jan. 31, 2005.

Certiorari Denied May 19, 2005.

Sarah M. Singleton, Andrew S. Montgomery, Montgomery & Andrews, P.A., James George Chakeres, Santa Fe, NM, for Appellant.

G.T.S. Khalsa, Santa Fe, NM, for Appellee.

## OPINION

BUSTAMANTE, Chief Judge.

{1} Frank Talamante (Employee) appeals an order from the district court affirming the Public Employees Retirement Board's (the PERA Board) decision to deny his claim for disability retirement benefits. At issue is the proper interpretation of NMSA 1978, § 10–11–10.1(C)(2)(a) (1993), and what is required to prove that an employee is "mentally or physically totally incapacitated for any gainful employment." In particular, this case poses the question of whether the legislature intended a specific geographic area to be considered when deciding whether an employee is incapacitated for gainful employ-

ment. We hold that in order to be entitled to disability retirement benefits an employee must establish that no "gainful employment" is attainable within the State of New Mexico, unless the employee presents substantial evidence that application of this statewide standard to the employee is unreasonable. We remand.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} Employee is a Public Employment Retirement Association (PERA) member with 11.8 years of service credits. Employee began working for the Village of Chama in 1983. Employee had previously worked in Chama, as well as in Colorado, Farmington, and Santa Fe. Employee made these job moves because he was offered more money. Employee eventually settled in Chama to raise his children where he and his wife preferred the Chama school system. Employee's children are now over 18 years of age. While working for the Village of Chama, Employee was a heavy equipment operator. In June 1996, at the age of 42, Employee suffered a back injury. Employee had suffered a previous back injury in 1974 from which he returned to full duty operating and maintaining heavy equipment, although he continued to have some back problems as a result of that prior injury.

{3} After the 1996 injury, Employee saw Dr. Akes who referred him to Dr. Feldman. In 1998, consulting Dr. Feldman's reports, Dr. Delahoussaye performed an independent medical evaluation of Employee. Employee conceded that Dr. Feldman told him that there was a very small problem with his disc, that it was not affecting any nerves, and that he should get on with his life and go back to work. Dr. Delahoussaye found Employee to be capable of full-time employment at a medium duty status. On March 9, 2001, the Functional Capacity Assessment reported to the PERA that Employee "could work and work safely within the [l]ight-[m]edium physical demand level." This report was consistent with the findings of Drs. Delahoussaye and Feldman. The hearing officer concluded that Dr. Akes' opinion that Employee was unable to work and had restrictions of "no lifting, no work" was unreliable. Employee is currently released to return to work with the restriction that he is not to lift more than fifty pounds.

{4} Employee did not look for employment after the 1996 injury until his workers' compensation and administrative leave were exhausted in February 1999. Employee has not looked for work outside a fifty-mile radius of Chama, although as discussed above, Employee's work history reflected several occasions prior to 1983 when he had taken employment beyond this geographical boundary. Employee testified that the general manager at the Chama railroad turned Employee down for employment because of his physical restrictions. Employee was told by the Village of Chama, the grocery store, the gas station owners in Chama, and the Espanola Department of Labor that there were no openings.

{5} Employee's application for disability retirement benefits was denied by the PERA Disability Review Committee. On appeal to the PERA Board, the hearing officer recommended denial of benefits. Based on the hearing officer's recommendation, the PERA Board also denied Employee's application. Employee filed an administrative appeal to the district court. The district court affirmed the PERA Board decision. Employee filed a motion for reconsideration in the district court, which was also denied. Employee then filed a petition for writ of certiorari, which was granted by this Court.

## STANDARD OF REVIEW

{6} In exercising our certiorari jurisdiction, we "conduct the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003–NMSC–005, ¶ 16, 133 N.M. 97, 61 P.3d 806. We review the Board's decision to determine whether "(1) [it] acted fraudulently, arbitrarily or capriciously; (2) the final decision was not supported by substantial evidence; or (3) [the Board] did not act in accordance with [the] law." NMSA 1978, § 39–3–1.1(D) (1999); *see* NMSA 1978, § 10–11–120(B) (1999). We review questions of statutory interpretation de novo. *Rio*

*Grande Chapter of the Sierra Club*, 2003–NMSC–005, ¶ 17; *Johnson v. Pub. Employees Ret. Bd.*, 1998–NMCA–174, ¶ 18, 126 N.M. 282, 968 P.2d 793.

## INTERPRETATION OF GAINFUL EMPLOYMENT

■ {7} At the time Employee applied for disability retirement benefits, he had worked for an affiliated public employer for 11.8 service credit years, although he was not a currently employed member of an affiliated public employer. The applicable inquiry, therefore, is whether Employee has met his burden of establishing that he is entitled to disability retirement benefits under Section 10–11–10.1(C)(2), which provides:

> C. The disability review committee shall review applications for disability retirement to determine whether:
>
> . . . .
>
> (2) if the member is not a currently employed, contributing employee of an affiliated public employer:
>
> (a) the member is mentally or physically totally incapacitated for any *gainful employment*; and
>
> (b) the incapacity is likely to be permanent.

(Emphasis added.)

Section 10–11–10.1(*O*)(2) defines "gainful employment" as "remunerative employment or self-employment that is commensurate with the applicant's background, age, education, experience and any new skills or training the applicant may have acquired after terminating public employment or incurring the disability[.]" While the federal statute requires consideration of the national economy in determining whether an employee is disabled, *see* 42 U.S.C. § 423(d)(2)(A) (2004), our New Mexico statute makes no mention of any geographic area to be considered. In the context of this case, we consider that the legislature has delegated to the PERA Board the authority to administer the Public Employees Retirement Act, NMSA 1978, § 10–11–1 (1987) (the Act), in "a reasonable manner consistent with legislative intent, in order to develop the necessary policy to respond to unaddressed or unforeseen issues." *City of*

*Albuquerque v. N.M. Pub. Regulation Comm'n*, 2003–NMSC–028, ¶ 16, 134 N.M. 472, 79 P.3d 297; *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995) ("When an agency that is governed by a particular statute construes or applies that statute, the court will begin by according some deference to the agency's interpretation."); *see also Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."). As our Supreme Court noted, "[t]he judicial deference to be accorded a legislative rule is a strong form of deference attributable to the fact that the agency is exercising legislative power." *City of Albuquerque*, 2003–NMSC–028, ¶ 16, (quoting 1 Richard J. Pierce, Jr., *Administrative Law Treatise* § 6.4, at 334 (4th ed. 2002) (internal quotation marks omitted)); *see also Regents of Univ. of N.M. v. Hughes*, 114 N.M. 304, 312, 838 P.2d 458, 466 (1992) (stating that "it is hornbook law that an interpretation of a statute by the agency charged with its administration is to be given substantial weight, and is entitled to judicial deference" (citations omitted)).

[3] {8} Therefore, we begin our interpretation of the meaning of "gainful employment" by considering the PERA Board's interpretation of that term as reflected in the applicable regulations promulgated under the Act in effect at the time Employee applied for disability retirement. *See Duke City Lumber Co. v. N.M. Envtl. Improvement Bd.*, 101 N.M. 291, 292, 681 P.2d 717, 718 (1984) (stating that "[t]he separation of powers doctrine directs administrative agencies to their duty of implementing legislation. The Legislature grants agencies the discretion of promulgating rules and regulations which have the force of law."); *see also Costain v. State Regulation & Licensing Dep't*, 1999–NMCA–119, ¶ 7, 128 N.M. 68, 989 P.2d 443 (stating that "[a]n act of an administrative agency which is authorized by the legislature has the force and effect of law"). We are mindful, however, that as the reviewing Court, we will reverse an agency's interpre-

tation of a statute if it is unreasonable or unlawful. *City of Albuquerque*, 2003–NMSC–028, ¶ 16, (citing *Morningstar*, 120 N.M. at 583, 904 P.2d at 32); *see also Torres v. State*, 119 N.M. 609, 612, 894 P.2d 386, 389 (1995) ("With deference always to constitutional principles, it is the particular domain of the legislature, as the voice of the people, to make public policy.").

{9} This Court has previously construed the meaning of the term "commensurate employment" with regard to compensation in *Johnson*, 1998–NMCA–174, ¶ 20. In *Johnson*, this Court agreed with the PERA Board that a claimant may be capable of obtaining "gainful employment" even though "the work the claimant is able to perform does not have the same duties or level of responsibility as his or her former job." *Id.* We also agreed with the PERA Board that "commensurate does not mean 'equal to.' " *Id.* We concluded, however, that gainful employment that is "commensurate," does not include "any employment, no matter how nominal or temporary, or employment which results in payment of a nominal sum or mere pittance." *Id.* Otherwise, "[s]uch interpretation [would] effectively eliminate[ ] the term 'commensurate' from the statute." *Id.* ¶ 23. Thus, we stated that gainful employment which is commensurate means "employment whose compensation approximates to a substantial degree what the claimant was able to earn when he or she was disabled." *Id.* ¶ 20. Regulation 2.80.1000.7(A) NMAC (2004) currently reads: " 'Commensurate' employment means that the applicant is able to engage in some profitable employment or enterprise in the state of New Mexico, which approximates to a substantial degree the applicant's pre-injury compensation but is not necessarily equal to the applicant's pre-injury employment."

{10} In this case, however, we are considering what commensurate employment means with regard to geographic area. Although raised by the parties at the hearings, what commensurate employment means with regard to geographic area was not determined by the PERA Disability Review Commission, the hearing officer, the PERA Board, or the district court. The hearing officer rejected Employee's legal arguments in favor of a fifty-mile radius standard. In addition, the hearing officer found as a matter of fact that "the factual record does not support [Employee's] contention that gainful employment is confined to the specified geographical area." However, the hearing officer did not decide what geographic area would be acceptable to sustain Employee's burden to show that he was not able to obtain commensurate employment. The hearing officer's recommended decision simply concluded that Employee was capable of commensurate employment and had failed to prove by a preponderance of the evidence that he could not find it. The PERA Board's order simply states that the PERA Board accepted and incorporated the hearing officer's recommendation "in the entirety."

{11} The district court stated that it was more inclined to favor Employee's proposal that the applicable geographic area would be northern New Mexico, including Espanola and Chama, rather than the statewide area the PERA Board advocated:

> Actually I don't have any problem with the argument here by [Employee] that a reasonable area from within which for him to look for employment is the area of northern New Mexico, Espanola, Chama, that area. I think that's more consistent with what the Legislature had in mind, so I would reject [the PERA Board's lawyer]'s argument that it is required, that an employee establish that no commensurate employment exists in the entire state. That seems inconsistent with what I see as the Legislative intent in finding commensurate employment.

The district court affirmed the PERA Board's order, however, on the basis that the hearing officer could reasonably conclude that Employee's own testimony about his search for a job did not sustain Employee's burden of showing that Employee was not able to find commensurate employment even within the geographic area Employee proposed. Thus, the decisions below agreed that Employee did not sustain his burden of proving that he was not able to find commensurate employment but did not specifically

**230**

decide what that burden entails with regard to geographic area.

{12} The *Johnson* opinion also discusses what the legislature intended when it used the word "commensurate" in general: commensurate employment means employment that is "reasonably attainable." 1998–NMCA–174, ¶ 20. Thus, in *Johnson*, this Court held that, whether the work an employee is able to perform is " 'commensurate' is a factual question, taking into consideration the claimant's background, age, education, experience, and skills." *Id.; see also Torix v. Ball Corp.*, 862 F.2d 1428, 1430 (10th Cir.1988) (" 'Permanent disability is a question of fact that depends upon all the circumstances of a particular case.' " (quoting *Helms v. Monsanto Co.*, 728 F.2d 1416, 1420 (11th Cir.1984))).

{13} At the time Employee applied for disability retirement and currently the PERA Board's regulation provides, with regard to geographic area, that an employee must show that he is unable to engage in some profitable employment or enterprise in the State of New Mexico. We agree with the PERA Board that a community based geographic standard would be problematic and may give rise to equal protection problems. For example, an applicant having Employee's current physical restrictions and remaining capabilities in this case would be entitled to disability retirement because he lives in a relatively small community, Chama, surrounded by a relatively rural area, whereas another applicant with the same physical restrictions and remaining capabilities, who happens to live in a larger, more commercially developed area, like Santa Fe, Albuquerque, or Las Cruces, would be denied disability retirement because there are more employment options. The statewide standard, moreover, seems to comport with the legislative intent given the statutory language allowing disability retirement to be awarded only to those applicants who are permanently mentally or physically "totally incapacitated for any gainful employment." Section 10–11–10.1(C)(2)(a). This statutory language does not bear Employee's interpretation that disability retirement benefits are payable to a person who remains capable of some gainful employment within certain re-

strictions, but who simply testifies, as Employee did in this case, that they cannot find a job within some variable or arbitrarily chosen radius of their current community.

{14} As such, we defer to the PERA Board's statewide standard. However, in accordance with the rationale from *Johnson*, 1998–NMCA–174, ¶ 20, and with the requirement that the PERA Board's interpretation must be reasonably consistent with legislative intent, *City of Albuquerque*, 2003–NMSC–028, ¶ 16, we read the term "commensurate" in the definition of gainful employment as necessarily tempering the geographical requirement to mean that an employee could make a factual showing that the statewide standard is unreasonable with regard to that particular employee. *See Johnson*, 1998–NMCA–174, ¶ 20. Thus, we hold that in order to be entitled to retirement disability benefits, a PERA member employee has the burden of showing by a preponderance of the evidence that commensurate employment is not attainable within the State of New Mexico, unless the employee can present substantial evidence that under the circumstances of his case it is unreasonable for him to have to satisfy the statewide standard.

**CONCLUSION**

{15} We remand to the district court for subsequent remand to the hearing officer for application of this standard to this Employee. Employee should be allowed the opportunity to show why the statewide standard would be unreasonable as applied to his situation.

{16} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and CYNTHIA A. FRY, Judges.