**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-109**

**Filing Date: August 14, 2009**

**Docket No. 28,108/28,109 (Consolidated)**

**DENNIS GONZALES and**
**TOBIAS PINO,**

　　　**Petitioners-Appellants,**

**v.**

**STATE OF NEW MEXICO PUBLIC**
**EMPLOYEES RETIREMENT**
**ASSOCIATION, and its BOARD,**

　　　**Respondent-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**James A. Hall, District Judge**

Law Offices of E. Justin Pennington
E. Justin Pennington
Albuquerque, NM

for Appellants

G.T.S. Khalsa
Santa Fe, NM

for Appellee

Youtz and Valdez, P.C.
Shane Youtz
Brandt Milstein
Albuquerque, NM

for Amicus Curiae American Federation
of State, County & Municipal Employees
(AFSCME Council 18)

**OPINION**

**FRY, Chief Judge.**

**{1}** In these consolidated cases, Petitioners Dennis Gonzales and Tobias Pino challenge the decision of the Public Employees Retirement Board (the Board) denying them disability retirement benefits. Relying on a statutory provision applicable to a member of the Public Employees Retirement Association (PERA) who "is not a currently employed, contributing employee of an affiliated public employer," the Board concluded that each Petitioner met this definition when his application for benefits was filed. NMSA 1978, Section 10-11-10.1(C)(2) (1993). Because of this employment status, the Board determined that neither Petitioner was eligible for benefits because neither was "totally incapacitated for any gainful employment." Section 10-11-10.1(C)(2)(a). We hold that the Board applied the wrong standard for determining disability. Because each Petitioner was a currently employed, contributing employee at the time his disability was incurred, the Board should have utilized the standard applicable to such an employee, which permits disability benefits if the employee is "totally incapacitated for continued employment with an affiliated public employer." Section 10-11-10.1(C)(1)(a). We reverse and remand for reconsideration of each Petitioner's application in light of the proper standard. We also deny PERA's motion to dismiss Gonzales's appeal.

**BACKGROUND**

**Gonzales**

**{2}** Petitioner Gonzales was employed as a juvenile correctional officer by the Children, Youth & Families Department (CYFD) beginning in 1997. He sustained an injury to his back, later diagnosed as a herniated disk, on March 16, 2004. He was placed on leave and began receiving workers' compensation benefits on September 1, 2004. By January 2005, Gonzales had exhausted all of his accrued annual and sick leave, and in March 2005, he reached maximum medical improvement. When his employer determined that there was no suitable employment within CYFD that could accommodate Gonzales's restrictions, it terminated him effective August 15, 2005. Upon learning of his impending termination, Gonzales applied with PERA for disability retirement benefits on August 5, 2005. PERA determined that more information was needed for Gonzales's application, and the application was finally deemed complete on September 30, 2005.

**{3}** The following facts are undisputed. At the time of his application for benefits, Gonzales had five or more years of PERA service credit, he was not able to continue the job he had when he was injured, but he was not disabled from commensurate gainful employment. He made no PERA employee contributions in 2005, with the possible exception of June 2005.

2

**{4}** PERA informed Gonzales on October 13, 2005, that its Disability Review Committee (DRC) recommended denial of disability benefits "because the information provided did not show that [he] was totally and permanently incapacitated from performing any gainful employment." Gonzales appealed the recommendation, and the appeal was heard by a hearing officer.

**{5}** At the hearing, Gonzales argued that under the proper interpretation of the applicable statute, he was a currently employed, contributing PERA member at the time of his application on August 5, 2005. As such, he maintained that he was entitled to disability benefits because he was incapacitated for continued employment with an affiliated public employer. He argued alternatively that his membership status should be determined at the time his disability arose.

**{6}** The hearing officer filed his recommended decision, in which he rejected Gonzales's argument and concluded that the determinative date was the date Gonzales's application for benefits was complete, September 30, 2005. However, even if the date of the initial application—August 5, 2005—were deemed conclusive, the hearing officer determined that Gonzales was not a currently employed, contributing employee at that time because he made no contributions to PERA in August or September 2005, and he was terminated on August 15, 2005. As a result of this status, the hearing officer determined that Gonzales would be entitled to benefits only if he could establish that he was incapacitated for any gainful employment. Because Gonzales stipulated that he was not so incapacitated, the hearing officer concluded that Gonzales was not entitled to benefits.

**{7}** The Board adopted the hearing officer's recommended decision and Gonzales appealed the Board's decision to the district court. The district court affirmed the Board's decision, and we granted Gonzales's petition for certiorari.

**Pino**

**{8}** Petitioner Tobias Pino was employed as a firefighter with the City of Albuquerque since 1989. On November 10, 2000, Pino sustained an on-the-job injury to his left knee. Although the City terminated his employment in August 2001, the City's personnel board reinstated him retroactively. Pino was employed by the City until he resigned on April 12, 2006, at which time he was on leave without pay. The parties stipulated that Pino's last PERA contributions were made in December 2005.

**{9}** Pino filed his application for disability benefits with PERA on January 18, 2006. PERA informed Pino that it required more information, and Pino's application was deemed complete March 1, 2006. The DRC denied Pino disability retirement benefits, and Pino appealed. A hearing officer presided over the appeal hearing.

**{10}** Pino argued that the date of his injury was the date for determining his employment status and that on the date of his injury he was a currently employed, contributing member of PERA. Consequently, he argued, he was entitled to disability retirement benefits if he was not able to continue employment with an affiliated public employer. The hearing officer

3

rejected this argument and concluded that the operative date for determining employment status was the date of Pino's application. Because Pino was not a currently employed, contributing employee on that date, he was entitled to disability retirement benefits only if he established that he was totally incapacitated for any gainful employment. The hearing officer concluded that Pino had failed to meet this standard and affirmed the DRC's denial of benefits. The Board adopted the hearing officer's recommended decision, and Pino appealed to the district court, which affirmed. We granted Pino's petition for certiorari.

**DISCUSSION**

**{11}** On certiorari, "we conduct the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Talamante v. Pub. Employees Ret. Bd.*, 2006-NMCA-032, ¶ 6, 139 N.M. 226, 131 P.3d 76 (filed 2005) (internal quotation marks and citation omitted). "We review the Board's decision to determine whether (1) [it] acted fraudulently, arbitrarily or capriciously; (2) the final decision was not supported by substantial evidence; or (3) [the Board] did not act in accordance with [the] law." *Id.* (alterations in original) (internal quotation marks and citation omitted). To the extent our review requires statutory interpretation, we undertake de novo review. *Id.*

**{12}** This case presents issues of statutory construction. We must determine the meaning of "currently employed, contributing employee" as used in Section 10-11-10.1(C)(1) of the Public Employees Retirement Act (the Act), NMSA 1978, Sections 10-11-1 to -141 (1987, as amended through 2007). In addition, we must determine the triggering event for assessing an employee's status under the Act's provisions governing disability retirement benefits.

**{13}** Our Supreme Court recently articulated the role of appellate courts in construing a statute in *Bishop v. Evangelical Good Samaritan Society*, 2009-NMSC-036, ___ N.M. ___, 212 P.3d 361. The Court first observed that "if the meaning of a statute is truly clear—not vague, uncertain, ambiguous, or otherwise doubtful—it is of course the responsibility of the judiciary to apply the statute as written and not to second-guess the [L]egislature's selection from among competing policies." *Id.* ¶ 10 (internal quotation marks and citation omitted). But the Court also "cautioned against an overly simplistic application of the plain-meaning rule." *Id.* The Court stated that statutory construction should begin with an examination of the statute's language, which "is the primary indicator of legislative intent," and that the reviewing court should read all parts of a statute together "so that all parts are given effect." *Id.* ¶ 11. The appellate court "must also consider the practical implications and the [L]egislative purpose of a statute, and when the literal meaning of a statute would be absurd, unreasonable, or otherwise inappropriate in application, [the court must] go beyond the mere text of the statute." *Id.*

**Relevant Provisions of the Act**

**{14}** We begin with an overview of the Act's relevant provisions. The Act sets out the requirements for an award of disability retirement benefits as follows:

4

The disability review committee may retire a member on account of disability before the time the member would otherwise be eligible for retirement if the following requirements are satisfied:

> (1)  the member applying for disability retirement was a member at the time the disability was incurred;

> (2)  a written application . . . has been filed with the association by the member or by the member's affiliated public employer;

> (3)  employment is terminated within forty-five days of the date of approval of the application for disability retirement;

> (4)  if:

>> (a)  the member has five or more years of service credit;

>> . . . .

>> (5)  the member submits to all medical examinations and tests . . .;

> (6)  the disability review committee makes the determination required under Subsection C of this section.

Section 10-11-10.1(B)(1)-(6).

**{15}**  There is no dispute that Gonzales and Pino each satisfied requirements (1), (2), (4), and (5). Because their applications were denied, we cannot determine whether Subsection (B)(3) would have been satisfied. Therefore, the requirement at issue in this case is Subsection (B)(6), the determination of the DRC under Subsection C of the statute.

**{16}**  Before turning to Subsection C, we focus on requirement (1) above because it informs our analysis of Subsection C. Notably, requirement (1) states that the "member applying for disability retirement" must be "a member at the time the disability was incurred." Section 10-11-10.1(B)(1). There are two important aspects of this requirement: the applicant must be (a) a "member", and (b) "at the time the disability was incurred."

**{17}**  The Act defines a "member" in Section 10-11-2 as:

> [either (1)] a currently employed, contributing employee of an affiliated public employer, or [(2)] a person who has been but is not currently employed by an affiliated public employer, who has not retired and who has not received a refund of member contributions[.]

5

Section 10-11-2(M). Thus, the Act draws a distinction between a member who is "a currently employed, contributing employee" and one who is no longer working for a public employer, providing the latter has not retired and has not obtained a refund of his or her contributions to PERA. Section 10-11-10.1(C)(1).

{18} Either type of member may be eligible for disability retirement benefits if he or she was a member "at the time the disability was incurred." Section 10-11-10.1(B)(1). A former employee of an affiliated public employer whose date of disability occurred after receiving a refund of member contributions or during retirement is not eligible to receive disability retirement benefits. However, a person who was "a currently employed, contributing employee" at the time disability was incurred would be eligible for benefits. Section 10-11-10.1(C)(1).

{19} We turn now to Section 10-11-10.1(C). Assuming that an applicant satisfies requirements (1) through (5) of Section 10-11-10.1(B), the remaining requirement is that the DRC "makes the determination required under Subsection C." Section 10-11-10.1(B)(6). Subsection C provides:

> The disability review committee shall review applications for disability retirement to determine whether:
>
> (1)     if the member is a currently employed, contributing employee of an affiliated public employer:
>
> (a)     the member is mentally or physically totally incapacitated for continued employment with an affiliated public employer; and
>
> (b)     the incapacity is likely to be permanent; or
>
> (2)     if the member is not a currently employed, contributing employee of an affiliated public employer:
>
> (a)     the member is mentally or physically totally incapacitated for any gainful employment; and
>
> (b)     the incapacity is likely to be permanent.

Section 10-11-10.1(C)(1)(a)-(b) to (2)(a)-(b).

{20} We make two observations about Subsection C. We first note that the statute imposes two different standards for awarding disability benefits. Depending on the member's status, the member must demonstrate total physical and mental incapacity that is likely to be permanent either (a) "for continued employment with an affiliated public employer" or (b) "for any gainful employment." Section 10-11-10.1(C)(1)(a), (2)(a). The second type of incapacity is obviously more difficult to demonstrate than the first. Our

6

second observation is that the choice of which incapacity standard applies depends on whether the member is (a) "a currently employed, contributing employee of an affiliated public employer" or (b) "*not* a currently employed, contributing employee of an affiliated public employer." Section 10-11-10.1(C)(1), (2) (emphasis added). A member of the first category must demonstrate the lesser standard of incapacity—total incapacity "for continued employment with an affiliated public employer" as opposed to total incapacity "for any gainful employment." Section 10-11-10.1(C)(1)(a), (2)(a).

**{21}** Looking at the Act's definition of "member" in conjunction with the two standards of incapacity justifying an award of disability retirement benefits, we are able to make some preliminary assessments of the Legislature's intent when it enacted Section 10-11-10.1. The Act has two, and only two, definitions of "member." Similarly, Section 10-11-10.1 provides two standards of incapacity, depending on the type of member who has applied. It therefore makes sense that the two incapacity standards correspond to the two definitions of "member." One standard applies to a member who is defined as "a currently employed, contributing employee of an affiliated public employer," and the other applies to a member who is defined as "a person who has been but is not currently employed by an affiliated public employer, who has not retired and who has not received a refund of member contributions." Section 10-11-2(M).

**{22}** We further observe that a member who is approved to receive disability retirement benefits is entitled to only one year of such benefits, regardless of which standard of incapacity applied to the member. Section 10-11-10.1(D). At the end of that year, PERA reevaluates the member under the more difficult standard: total incapacity "for any gainful employment." *See* § 10-11-10.1(C)(2)(a), (D), (E), (F).

**{23}** Against this backdrop, we turn to the parties' arguments.

**The Parties' Contentions**

**{24}** Gonzales and Pino argue that their eligibility for disability retirement benefits should be governed by the less demanding standard of incapacity applicable to "currently employed, contributing employee" members. Section 10-11-10.1(C)(1). They appear to make two alternative arguments in support of their contention. First, they maintain that their eligibility for benefits should be determined by their membership status at the time disability was incurred, not at the time they applied for benefits. Both Gonzales and Pino were undisputedly employed and making PERA contributions at the time their respective disabilities were incurred. Second, even if the determinative date is the date of the benefits application, they contend that they should be deemed to have been "currently employed, contributing employee[s]" because they were still employed at that date even if they were not technically making contributions. *Id.*

**{25}** PERA responds that the operative date for determining member status is the date a member files an application for disability retirement benefits. In support of this position, PERA maintains that we should focus on the use of the word "is" in Section 10-11-10.1(C)(1), which applies the less onerous standard of incapacity to a "member [who] *is* a

7

currently employed, contributing employee." *Id.* The more burdensome standard of incapacity is reserved for a "member [who] *is not* a currently employed, contributing employee." Section 10-11-10.1(C)(2). Thus, according to PERA, because the determination of member status under Section 10-11-10.1(C) is made during review of an existing application, the member's employment situation should be assessed *as it exists at the time of the application*. In addition, PERA argues that even if a member is technically employed on the date of his or her application, the member cannot rely on the less onerous standard of incapacity unless the member is also making PERA contributions.

**Interpretation of the Act**

**{26}** The Act is silent as to the date for determining the status of a member for purposes of disability retirement benefits. The Act references "the time the disability was incurred" in its requirement that an applicant for benefits have been a member at that time. Section 10-11-10.1(B)(1). But, as noted by PERA, the Act also references the time the application for benefits was submitted, stating that "[a]fter approval, payment [of benefits] shall be effective commencing the first of the month following submission of the initial application." Section 10-11-10.1(D). Neither reference provides much guidance as to the date for assessing membership status.

**{27}** One potential guidepost is the language used to distinguish between the two types of members. One type is "a currently employed, contributing employee of an affiliated public employer" while the other is "a person who has been but is not currently employed by an affiliated public employer, who has not retired and who has not received a refund of member contributions." Section 10-11-2(M). Bearing these definitions in mind, at the time their respective disabilities were incurred, Gonzales and Pino were both "currently employed" and "contributing" employees. However, at the time of their applications, each was "currently employed" but not "contributing." Thus, at the time of their applications, they fell into a nonexistent category because they fit neither of the categories of "member" defined in Section 10-11-2(M). They did not fit the first category because they were no longer contributing to PERA, and they did not fit the second category because they were still currently employed.

**{28}** It would be absurd to conclude that Gonzales and Pino fell into a limbo status not addressed by the Act. Consequently, we read into the definition of membership the notion that one cannot be deemed a "currently employed" employee unless one is also a "contributing" employee. *See Bishop*, 2009-NMSC-036, ¶ 9 (explaining that where "adherence to the literal use of words would lead to injustice, absurdity or contradiction, the statute will be construed according to its obvious spirit or reason, even though this requires the rejection of words or the substitution of others" (internal quotation marks and citation omitted)). In other words, a member is either "a currently employed, contributing employee" or "a person who has been but is not [a] currently employed[, contributing employee of] an affiliated public employer who has not retired and who has not received a refund of member contributions." Section 10-11-2(M). This reading of the definition of "member" is consistent with the two categories of membership described in Section 10-11-

8

10.1(C): (1) one who "is a currently employed, contributing employee" and (2) one who "is not a currently employed, contributing employee." Section 10-11-10.1(C)(1), (2).

**{29}** With this in mind, it is clear that as of the date disability was incurred, both Gonzales and Pino were currently employed, contributing employees and that as of the date of their applications, they were not. Their status determines the extent of incapacity each had to demonstrate in order to receive disability retirement benefits. We therefore look for guideposts that can assist us in determining which date triggers assessment of membership status.

**{30}** The applicable regulations articulate the objective of the Act's disability retirement scheme. "The intent of the Board in promulgating these rules is to encourage continued employment of members while providing protection in cases of disability." 2.80.1000.6 NMAC (12/28/00) (emphasis omitted). Viewing the Act through this lens, we conclude that the operative date for determining a member's status for purposes of disability retirement benefits is the date disability is incurred.

**{31}** If the determinative date were the date of the member's application for benefits, a member would feel urgency about applying for benefits even before the member knows the extent of his or her disability or the likelihood of permanency. For example, in the case of Gonzales, he was injured in November 2000 but did not apply for benefits until January 2006. In the intervening five years, he received workers' compensation benefits and exhausted his annual and sick leave. When he learned that his public employer could not accommodate his physical limitations, he applied for disability retirement benefits. At that point, although he was still technically an employee of CYFD, he was no longer making PERA contributions because he was not being paid. If his membership status was determined at the time of his application, he would have to demonstrate the more onerous standard of incapacity for any gainful employment. Consequently, he would reduce this burden of demonstrating eligibility if he applied for benefits before he exhausted his leave while he was still making PERA contributions. In other words, had he applied for benefits a year sooner than he did, he likely could have demonstrated entitlement to benefits under the lesser burden of Section 10-11-10.1(C)(1).

**{32}** Advocating such premature applications for disability retirement benefits is contrary to the stated goal of "encourag[ing] continued employment of members while providing protection in cases of disability." 2.80.1000.6 NMAC. Indeed, tying the assessment of membership status to the application date does just the opposite. It encourages members to cut short their employment and seek disability benefits before they are certain they will really need those benefits.

**{33}** By contrast, if a member's status is assessed at the time disability is incurred, the member may remain an employee of a public employer, continue making contributions, and access support avenues other than disability retirement benefits, such as workers' compensation or accrued leave, in the hope that the member can regain the ability to return to work before circumstances compel the member to apply for disability retirement benefits.

9

This scenario is consistent with the intent articulated in the regulations and protects the public fisc from premature and possibly unnecessary payment of benefits.

**{34}**   PERA maintains that if the Legislature had wanted to tie assessment of membership status to the date disability was incurred, it would have used language other than the present tense "is" and "is not" in Section 10-11-10.1(C) when referring to the DRC's review of applications. We are not persuaded. This kind of hypertechnical scrutiny of a statute's language is an example of the "overly simplistic application of the plain-meaning rule" our Supreme Court cautioned against in *Bishop*, 2009-NMSC-036, ¶ 10. We conclude that Section 10-11-10.1(C) should instead be interpreted so that it is consistent with the purpose of the Act's disability retirement provisions. We therefore hold that the applications of Gonzales and Pino should have been evaluated according to their membership status at the time their respective disabilities were incurred. Because the Board's decision was not in accordance with this interpretation of the Act, it must be reversed. *See Talamante*, 2006-NMCA-032, ¶ 6 (explaining that appellate court may reverse an administrative decision if the board or agency "did not act in accordance with [the] law" (alteration in original) (internal quotation marks and citation omitted)).

**Motion to Dismiss Gonzales's Appeal**

**{35}**   After briefing was completed in this appeal, PERA filed a motion to dismiss Gonzales's appeal because he withdrew all of his PERA contributions in March 2007. PERA contends that "[o]nly PERA members are eligible to receive PERA disability retirement benefits" and that "even if [Gonzales] were to prevail in this matter, he would not be eligible to receive the disability retirement benefits that is [sic] the basis of his claim." Gonzales responds that if his application for benefits, filed on August 5, 2005, had been granted, he would have been entitled to benefits for only one year until August 2006. In other words, all of his benefits had accrued before he withdrew his contributions.

**{36}**   These issues are properly determined by the Board in the first instance because they may involve factual disputes, and we remand for the Board's consideration. To the extent PERA contends that Gonzales's claim is moot, we disagree. "A case is moot when no actual controversy exists, and the court cannot grant actual relief." *Gunaji v. Macias*, 2001-NMSC-028, ¶ 9, 130 N.M. 734, 31 P.3d 1008 (internal quotation marks and citation omitted). Given our reversal of the Board's denial of benefits, if Gonzales is correct that his benefits accrued before he withdrew his contributions, then he may be entitled to benefits. Thus, his claim is not moot. We therefore deny PERA's motion to dismiss Gonzales's appeal.

**CONCLUSION**

**{37}**   For the foregoing reasons, we reverse the district court's judgment affirming the Board's denial of disability retirement benefits and remand for proceedings consistent with this opinion.

**{38}   IT IS SO ORDERED.**

10

**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**CELIA FOY CASTILLO, Judge**

**Topic Index for** _Gonzales v. State of New Mexico Public Employees Retirement Assoc._**,
Nos. 28,108/28,109**

| | |
|---|---|
| **AL** | **ADMINISTRATIVE LAW** |
| AL-AA | Administrative Appeal |
| AL-LI | Legislative Intent |
| AL-SR | Standard of Review |
| | |
| **AE** | **APPEAL & ERROR** |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-MO | Mootness |
| CP-MD | Motion to Dismiss |
| | |
| **EL** | **EMPLOYMENT LAW** |
| EL-HB | Health, Pension, and Retirement Benefits |
| EL-DB | Disability |
| | |
| **GV** | **GOVERNMENT** |
| GV-PE | Public Employees |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| ST-RC | Rules of Construction |