**Certiorari Denied, November 13, 2013, No. 34,364**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-009**

**Filing Date: September 16, 2013**

**Docket No. 32,355**

**CITY OF ARTESIA and
DONALD N. RALEY,**

    **Plaintiffs-Appellees,**

**v.**

**PUBLIC EMPLOYEES RETIREMENT
ASSOCIATION OF NEW MEXICO,**

    **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY
Lisa B. Riley, District Judge**

Robles, Rael & Anaya, P.C.
Marcus J. Rael, Jr., Esq.
Adam H. Greenwoood, Esq.
Vanessa R. Chavez, Esq.
Albuquerque, NM

for Appellees

Public Employees Retirement Association
Susan G. Pittard, General Counsel
Christopher Bulman, Assistant General Counsel
Santa Fe, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

1

**{1}**      The City of Artesia (the City) and its Chief of Police Donald Raley (Raley) (Plaintiffs) filed an action for injunctive relief, writ of mandamus, and declaratory judgment to prevent the Public Employees Retirement Association of New Mexico (PERA) from suspending Raley's pension after the March 2012 municipal election in Artesia.  When Raley was appointed to this position, NMSA 1978, Section 10-11-8(D) (2004) (amended 2010) provided that a PERA retiree appointed as a chief of police for a municipality had the option of filing an irrevocable exemption from PERA membership for the chief of police's "term of office."  In 2010, the Legislature amended Section 10-11-8 and removed this chief of police exemption.  The district court determined that PERA could not apply the 2010 version of Section 10-11-8 to Raley because the City appointed Raley for an indefinite term. We hold that Raley's term of office coincides with the City's organizational meeting following the municipal election held every two years and, therefore, the district court erred in determining that Raley's term of office was for an indefinite term.  Accordingly, we reverse.

**BACKGROUND**

**{2}**      The City appointed Raley to the position of chief of police in September 2006. At the time of his appointment, Raley was a PERA retiree and received a pension. At that time, Section 10-11-8(D) (2004) provided that a PERA retiree appointed as a chief of police for a municipality had the option of filing an irrevocable exemption from PERA membership for the chief of police's "term of office."  This exemption allowed Raley to receive both his pension and his salary without either Raley or the City having to make contributions to the PERA trust fund.  *Id.*  The City submitted the required exemption request form when it appointed Raley and left blank the line indicating the end date of Raley's "term of office."

**{3}**      In 2010, the Legislature amended Section 10-11-8 and removed the chief of police exemption.  *See* NMSA 1978, § 10-11-8 (2010).  The effect of the 2010 amendment on Raley's exemption gives rise to the dispute in this case.  Plaintiffs' position is that Raley's 2006 appointment was for an "indefinite term," and, therefore, the exemption remained in effect until his service with the City was interrupted or terminated.  PERA asserts that municipal appointees, including a chief of police, serve definitive terms of two years, subject to reappointment at a municipality's organizational meeting following each biennial municipal election.  According to PERA, Raley's exemption ended when the City held its organizational meeting following the March 2012 municipal election because Raley's position required appointment and reappointment every two years.

**{4}**      After a substantive hearing on November 16, 2011, the district court granted a preliminary injunction preventing PERA from suspending Raley's pension following the election.  It subsequently issued its final order allowing Raley to continue to simultaneously receive his salary and his pension for an indefinite period, applying the pre-2010 version of Section 10-11-8.  The district court found that the City appointed Raley as the chief of police for an "indefinite term" in 2006 and that PERA could not terminate Raley's exemption based on the 2010 amendment to Section 10-11-8(D). PERA filed a timely appeal.

**{5}** On appeal, PERA raises three issues, that the district court erred by (1) determining that the City has standing to litigate the issue of Raley's eligibility to simultaneously receive a salary and a pension, (2) finding that Raley was appointed for an "indefinite term" and that therefore a termination of his exemption pursuant to the 2010 amendment to Section 10-11-8(D) would constitute a violation of state law, and (3) granting injunctive relief prohibiting PERA from terminating Raley's exclusion on or after the March 2012 organizational meeting.

## CITY OF ARTESIA'S STANDING

**{6}** We first turn to the issue of the City's standing. According to PERA, "the City is neither classically aggrieved nor has it provided any basis for standing under the Declaratory Judgment Act, NMSA 1978, §§ 44-6-1 to -15 (1975), [and] therefore, the district court erred in concluding the City also had standing."

**{7}** Unlike in federal courts, standing in New Mexico courts is not jurisdictional because it is not governed by the New Mexico Constitution. *ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 9, 144 N.M. 471, 188 P.3d 1222. However, "at least as a matter of judicial policy if not of jurisdictional necessity, our courts have generally required that a litigant demonstrate injury in fact, causation, and redressability to invoke the court's authority to decide the merits of a case." *Id.* ¶ 10. The standing of a party to bring a claim is a question of law subject to de novo review. *N.M. Gamefowl Ass'n, Inc. v. State ex rel. King*, 2009-NMCA-088, ¶ 12, 146 N.M. 758, 215 P.3d 67.

**{8}** But, even though the district court granted the City standing to litigate the issues in this case, we do not consider standing to be necessary for our review. Raley is also a Plaintiff, and PERA concedes that there is no dispute that "Raley has standing to litigate the proper application of [the 2010 amendment to Section 10-11-8(D)] because it directly affects his ability to continue to receive both a salary and a pension." Because Raley has standing to assert the substantive relief sought in this case, we need not independently address the City's standing. *See Comcast Corp. v. Fed. Commc'n Comm'n*, 579 F.3d 1, 6 (D.C. Cir. 2009) ("[I]f one party has standing in an action, a court need not reach the issue of the standing of other parties when it makes no difference to the merits of the case." (internal quotation marks and citation omitted)). We proceed to the merits of the case.

## SECTION 10-11-8(D)

**{9}** Prior to the 2010 amendment, the PERA return-to-employment provisions provided that "a retired member may be subsequently employed by an affiliated public employer if" certain conditions applied. Section 10-11-8(C) (2004). These conditions included that the retired member and the affiliated employer "shall" make contributions to the PERA fund. Section 10-11-8(C)(2), (3) (2004). Section 10-11-8(D)(1)(c) (2004) contained an exemption for a PERA retiree who was appointed as the chief of police of a municipality for the duration of the chief of police's "term of office." The exemption allowed the chief of police

3

to continue receiving a PERA pension and a salary without either the retiree or the retiree's employer making contributions to the fund. *See* Section 10-11-8(D)(1) (2004).

**{10}** After the 2010 amendment, Section 10-11-8 provides that a retired member may subsequently be employed by an affiliated employer but, among other conditions, "the retired member's pension shall be suspended upon commencement of the employment[.]" Section 10-11-8(C)(2). The amendment went into effect on July 1, 2010. 2010 N.M. Laws, ch. 18, § 2.

**{11}** PERA argues that the district court erred by finding that Raley was appointed for an "indefinite term" as chief of police, that the chief of police exemption therefore still applies, and that suspending Raley's pension would constitute a violation of state law. On the other hand, Plaintiffs contend that the phrase "term of office" does not contemplate a fixed term and that Raley and the City "have long agreed and understood" that his term is for an indefinite length. The parties agree that, because the chief of police exemption was no longer available after July 1, 2010, a retired member appointed to the position of chief of police after July 1, 2010 would be subject to the new statutory provisions. The issue in this case is whether Raley's "term of office" ended upon the March 2012 municipal election and subsequent organizational meeting. This issue requires statutory interpretation of Section 10-11-8(D)(1) and is therefore primarily a question of Legislative intent. *See Bd. of Educ. v. N.M. State Dep't of Pub. Educ.*, 1999-NMCA-156, ¶ 16, 128 N.M. 398, 993 P.2d 112 ("The primary purpose of statutory interpretation is to ascertain and give effect to legislative intent." (internal quotation marks and citation omitted)).

**{12}** The "primary indicator" of legislative intent is the language of the statute. *Gonzales v. State Pub. Emps. Ret. Ass'n*, 2009-NMCA-109, ¶ 13, 147 N.M. 201, 218 P.3d 1249 (internal quotation marks and citation omitted). "We do not depart from the plain language of a statute unless we must resolve an ambiguity, correct a mistake or absurdity, or deal with a conflict between different statutory provisions." *N.M. Bd. of Veterinary Med. v. Riegger*, 2007-NMSC-044, ¶ 11, 142 N.M. 248, 164 P.3d 947. Additionally, we determine the legislative intent "by reading all the provisions of a statute together, along with other statutes in pari materia." *N.M. Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-010, ¶ 12, 141 N.M. 41, 150 P.3d 991.

**{13}** Our Supreme Court has addressed the meaning of the word "term" and whether a "term of office" has expired in a different context in *Denish v. Johnson*, 1996-NMSC-005, 121 N.M. 280, 910 P.2d 914. The issue in *Denish* was whether the terms of office of two regents at the New Mexico Institute of Mining and Technology had expired so that the governor could appoint their replacements. *Id.* ¶¶ 1, 15. The Court defined "term" as "the fixed period of time the appointee is authorized to serve in office. It is a period that is established by law and specified by the executive in his or her letters of appointment." *Id.* ¶ 18.

**{14}** Our Supreme Court again addressed the word "term" and phrase "term of office" in

4

*Block v. Vigil-Giron*, 2004-NMSC-003, 135 N.M. 24, 84 P.3d 72. In *Block*, the plaintiff was a member of the Public Regulatory Commission (PRC) who sought a declaration to be put on the ballot in the next general election to run for a second four-year term. *Id.* ¶ 1. The plaintiff had served a two-year term upon the creation of the PRC, which was necessary in order for the members to serve staggered terms, and was subsequently elected to a full four-year term. *Id.* ¶ 2. The New Mexico Constitution limits PRC members from serving for more than two terms. *Id.* ¶ 1. The plaintiff argued that since his first term was a shortened two-year term, he had not served two terms and was entitled to run for a second four-year term. *Id.* The Court examined the "normal understanding of the word 'term' " and determined that it means a "fixed and definite period of time; implying a period of time with some definite termination." *Id.* ¶ 5 (quoting *Black's Law Dictionary* 1482 (7th ed. 1999)). The Court further defined "term of office" as the "period during which an elected officer or appointee may hold office, perform its functions, and enjoy its privileges and emoluments." *Id.* (quoting *Black's Law Dictionary, supra*, at 1483). The Court applied these definitions, noted that they were consistent with *Denish*, and held that the plaintiff had served two terms and was therefore ineligible to be on the ballot. *Id.* ¶ 6.

**{15}**    Applying these definitions, the legislative intent of the phrase "term of office" in Section 10-11-8(D)(1) (2004) refers to the period during which the chief of police may hold the office, perform its functions, and enjoy its privileges. We turn to the statutes outlining the appointment of municipal officers and employees in the Municipal Code, NMSA 1978, §§ 3-1-1 to -66-11 (1965, as amended through 2011), to determine if the district court erred in concluding that Raley's appointment as chief of police was for an "indefinite term."

**{16}**    Section 3-11-6(A)(1) (1965) provides that "[s]ubject to the approval of a majority of all members of the governing body [of a municipality], the mayor shall:  (1) appoint all officers and employees except those holding elective office[.]" Under Section 3-12-4(A) (1965), the chief of police is one of the appointive officers of a municipality. Section 3-11-5(A) (1985) provides that

> [a]t the organizational meeting of the governing body [following a municipal election], the mayor shall submit, for confirmation by the governing body, the names of persons who shall fill the appointive office of the municipality . . . . If the governing body fails to confirm any person as an appointive official or employee of the municipality, the mayor at the next regular meeting of the governing body shall submit the name of another person to fill the appointed office or to be employed by the municipality.

The Municipal Code mandates that regular elections be held on the first Tuesday in March on even numbered years. Section 3-8-25 (1985). It also provides that the organizational meeting following a municipal election shall be held "not earlier than the sixth day after the election or later than the twenty-first day after the election." Section 3-8-33(H) (1995).

**{17}**    In compliance with the provisions of the Municipal Code, a municipality's chief of

5

police cannot have an "indefinite term" because the term is dependent on the results of each election, an appointment by the mayor at the organizational meeting, and confirmation by the governing body. Under the plain meaning of "term of office" as defined by *Denish* and *Block*, and in conjunction with the appointment and confirmation provisions in the Municipal Code, the term of office for a chief of police begins with the organizational meeting confirming the mayor's appointment and lasts until the next organizational meeting held following the next municipal election. In other words, the chief of police serves a two-year term commencing on the organizational meeting in which he or she is appointed until the next organizational meeting. Accordingly, Raley served a term of office that commenced following the March 2010 election and expired when he was appointed and confirmed at the organizational meeting following the March 2012 election. *See Denish*, 1996-NMSC-005, ¶ 16 ("A term *expires* when the appointee has served to the legally specified termination date."). The district court therefore erred in determining that Raley's term of office was indefinite and mandating that PERA apply the pre-2010 version of Section 10-11-8 to Raley.

**{18}** We note that Section 10-11-8(D) (2010) contained two exemptions from the return-to-employment provisions. Both exemption provisions apply to retirees employed in temporary positions, or serving in an elected office, with a definitive end. *See id.* (providing exemptions from the PERA return-to-work provisions for retirees (1) employed by the Legislature for legislative session work, and (2) elected to serve a term as an elected official). These provisions support a conclusion that the Legislature only provided exemptions to retirees employed in positions with definitive terms. *See also* Section 10-11-8(E) (2013) (adding exemption for retirees employed temporarily as precinct board members for elections).

**{19}** Plaintiffs make five additional arguments as to why our conclusion is incorrect. First, Plaintiffs contend that "[g]iven that [the Municipal Code] treat[s] municipal officers and employees similarly, the municipal authority over appointed officials should be similar to the authority over regular employees. There is no dispute that municipal employees do not serve 'terms of office' that terminate and re-start each election year." Accordingly, Plaintiffs' position is that municipal officers do not serve fixed terms of office under the Municipal Code. In support, Plaintiffs point out that Section 3-11-5(A) mandates that the mayor "shall submit, for confirmation by the governing body, the names of persons who shall fill the appointive offices of the municipality and the names of persons who shall be employed by the municipality." However, Section 3-11-5(B) provides that "[a]ny person holding an appointed office at the time of the municipal election shall continue in that office until his successor has been appointed and is qualified." This holdover provision does not apply to employees of the municipality who are not appointed officers. It would be unnecessary if the Legislature intended that appointed officers serve indefinite terms. *See Denish*, 1996-NMSC-005, ¶ 51 (holding that a holdover provision in our state constitution "is not a simple extension of the expired term[; r]ather[,] it is an intrusion into the term following"). The lack of a similar holdover provision that applies to employees supports a distinction between municipal employees and appointed officers despite the similar treatment under Section 3-11-5(A).

**{20}** Second, Plaintiffs argue that the Municipal Code never expressly states that the term of office for the chief of police is "fixed" and that Raley and the City have "long agreed and understood" that Raley's appointment was "indefinite" when the mayor appointed Raley in 2006. However, as we have discussed, the Municipal Code requires the mayor to reappoint and the governing body to confirm the chief of police every two years, which is inconsistent with any asserted agreement between Raley and the City that Raley's appointment was indefinite. *See* § 3-11-6(A)(1); § 3-11-5(A). The length of Raley's "term of office" as defined by the Municipal Code has legal superiority over any inconsistent agreement between the parties. *See K.R. Swerdfeger Constr., Inc. v. Bd. of Regents, Univ. of N.M.*, 2006-NMCA-117, ¶ 27, 140 N.M. 374, 142 P.3d 962 ("Our case law has repeatedly recognized that New Mexico . . . has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or rule of public morals." (internal quotation marks and citation omitted)). Under the provisions we have discussed, the chief of police serves a term that is fixed in the sense that it commences upon appointment and confirmation at or subsequent to an organizational meeting and requires reappointment and confirmation at the next organizational meeting following every biennial municipal election.

**{21}** Third, Plaintiffs argue that the relevant portions of the Municipal Code relating to the discharge of municipal officers are "statutory indicia lead[ing] to the conclusion that municipal officers serve indefinitely" because the "mayor and the municipal governing body may . . . discharge appointed persons at any time." Indeed, Section 3-11-6(D) provides that "(1) the governing body may discharge an appointed official or employee by a majority of all members of the governing body; (2) the mayor may discharge an appointed official or employee upon the approval of a majority of all the members of the governing body[.]" However, there is no contradiction between a fixed two-year term and the removal power upon a majority vote by the governing body during that fixed term. Early removal of an appointed officer is one of the additional statutory powers granted to a municipality by the Legislature. Section 3-11-6(D).

**{22}** Fourth, Plaintiffs argue that if the Legislature "wishes to make clear that a term is for a definite period, it says so." *See, e.g.*, NMSA 1978, § 32A-5-42(B) (1993) (requiring criminal sentences of a "definite term" for the crime of unauthorized facilitation of adoptions); NMSA 1978, § 54-1A-406(A) (1997) (referring to partnerships for a "definite term"). But the statutes at issue in this case are different from the examples cited by Plaintiffs and there is no ambiguity as to the "term of office" in light of the provisions of the Municipal Code. As discussed, Section 10-11-8(D)(1) (2004) generally provided an exemption from the return-to-work procedures for the "term of office" of a chief of police. The Municipal Code defines the length of the term of office. *Dydek v. Dydek*, 2012-NMCA-088, ¶ 58, 288 P.3d 872 ("[A]s a rule of statutory construction, we read all provisions of a statute and all statutes in pari materia together in order to ascertain the legislative intent." (alteration in original) (internal quotation marks and citation omitted)).

**{23}** Lastly, Plaintiffs argue that *Denish* is distinguishable and that "it is simply not true

7

that *Denish* was adopting a general definition of 'term' that was meant to apply outside the state-officer context of the case." In *Block*, our Supreme Court clarified that the "normal understanding" of the word "term" is that it is the "period during which an elected officer or appointee may hold office, perform its functions, and enjoy its privileges and emoluments." 2004-NMSC-003, ¶ 5. The *Block* Court noted that the definition it applied was consistent with *Denish*. *Denish* and *Block* both generally applied the plain meaning of the word "term" to the statutes and constitutional provisions at issue in those cases, as we have done in this case. *See Gonzales*, 2009-NMCA-109, ¶ 13.

## CONCLUSION

**{24}** Raley's term of office concluded with the City's organizational meeting following the 2012 municipal election, and, therefore, the district court erred in determining that Raley's term of office was for an indefinite term. Accordingly, we reverse.

**{25}** **IT IS SO ORDERED.**

 

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

_____
**M. MONICA ZAMORA, Judge**

**Topic Index for *City of Artesia v. PERA of N.M.*, No. 32,355**

**ADMINISTRATIVE LAW AND PROCEDURE**
Administrative Appeal
Judicial Review
Legislative Intent
Standard of Review

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Injunctions
Standing

**EMPLOYMENT LAW**

Health, Pension, and Retirement Benefits

**GOVERNMENT**
Municipalities
Public Employees

**STATUTES**
Interpretation
Legislative Intent