1998-NMCA-174

968 P.2d 793

**Rodney E. JOHNSON, Claimant–Appellant,**

v.

**PUBLIC EMPLOYEES RETIREMENT BOARD OF THE PUBLIC EMPLOYEES RETIREMENT ASSOCIATION OF NEW MEXICO, Respondent–Appellee.**

No. 19,098.

Court of Appeals of New Mexico.

Sept. 23, 1998.

Certiorari Denied, No. 25,417, Nov. 13, 1998.

Earl Mettler, Mettler & LeCuyer, P.C., Albuquerque, for Appellant.

Tom Udall, Attorney General, Sondra K. Frank, Ass't Attorney General, Santa Fe, for Appellee.

## OPINION

DONNELLY, J.

{1} Appellant appeals from a judgment of the district court affirming an administrative decision of the Public Employees Retirement Board (Board) that denied his reapplication for the payment of disability benefits. Three issues are asserted on appeal: (1) whether Appellant was improperly denied disability benefits; (2) whether the Board's decision was supported by substantial evidence or was arbitrary, capricious, or contrary to law; and (3) whether the Board failed to consider relevant vocational evidence. Reversed and remanded.

*FACTS*

{2} Appellant was employed by the San Juan County Sheriff's Department as a deputy sheriff. On April 15, 1988, while making an arrest incident to his duties as a law enforcement officer, Appellant sustained a serious injury to his hand and wrist. He was placed on light duty and continued working with the Sheriff's Department for two years, until May 1990, when he was terminated.

{3} As a result of his injury, Appellant was operated upon and underwent nerve transplant surgery and repair of torn ligaments in his left wrist. He has permanent scapholunate instability requiring him periodically to wear a splint, and he is restricted from performing any physical or repetitive activities. Following his termination, Appellant received disability benefits from the Public Employees Retirement Association (PERA) for two years. After a reevaluation of his disability, he was notified that his benefits would cease, effective May 1, 1992. When his PERA benefits were terminated, Appellant worked three months for a private employer doing construction work before he was laid off. Following that, he was employed as a security guard for the Durango Public Schools in Colorado, and, subsequent-

ly, he was briefly employed as a part-time security guard on a ranch.

{4} Appellant reapplied for PERA benefits on June 13, 1995. The Disability Review Committee (the Committee) denied Appellant's application for benefits on September 13, 1995. Following that ruling, Appellant pursued an administrative appeal, and a hearing officer heard evidence on December 11, 1995. Appellant testified at the hearing that he was forty-four years of age, that he is a high school graduate, and that he has one year of college. After graduating from the State Police Academy, he worked for two years as a state police officer. Thereafter, he was employed by the San Juan County Sheriff's Office. His primary career work has been that of a law enforcement officer. Appellant testified, however, that because of his disability he is unable to continue working as a law enforcement officer because he is unable to physically restrain others or to defend himself. Prior to attending the State Police Academy, Appellant stated that he worked one year as a heavy equipment operator.

{5} Dr. Robert L. Grossheim evaluated Appellant's disability and found that he has scapholunate instability to his left wrist which permanently precludes him from engaging in "any physical or repetitive activities with the wrist joint on a permanent basis." Dr. Grossheim also stated that Appellant "wears a splint [on his left wrist], avoids stressful activities, and has pain with hyperextension."

{6} Evidence concerning the limitations and restrictions on Appellant's ability to work was presented by Appellant's witness, Roger K. Anderson, a vocational rehabilitation counselor with the State of Colorado Vocational Rehabilitation Services. Anderson stated that Appellant "is limited in his work tolerance and his capacity to perform physical activities" and that he is in need of "vocational rehabilitation services in order to return to gainful employment."

{7} Appellant also presented the report of Martha A. Rimmel, a vocation rehabilitation expert. She stated that Appellant's training qualified him to perform work as a

police inspector, private investigator, and deputy sheriff, but that "[o]f these jobs, only the job of private investigator would not require a strenuous qualifying exam [or] physical training. This job has good earning potential but is not generally offered on a full-time basis in a rural community." Rimmel also stated that, although Appellant was qualified to perform several other jobs, only the positions of a motor vehicle inspector, exhibit-display representative, dispatcher or security guard were positions that did not require passing a physical examination.

{8} On January 28, 1996, after the presentation of evidence before the hearing officer, the hearing officer filed a report containing findings of fact and conclusions of law. The report recommended that Appellant's application for disability retirement be denied and found that Appellant was "not mentally or physically totally incapacitated for any gainful employment." The report of the hearing officer contained conclusions of law determining, in part:

5. The standard of incapacitation applicable in this case is whether the member is mentally or physically totally incapacitated for any gainful employment. Section 10–11–10.1(C)(2)(a) NMSA 1978 (1995 Repl.).

6. Based upon the preponderance of the medical evidence in the record, the appellant is not mentally or physically totally incapacitated for any gainful employment.

7. The Public Employees Retirement Act, Section 10–11–10.1 NMSA 1978 (1995 Repl.) provides for a disability *retirement* pension. The evidence does not establish that the appellant's incapacity is likely to be permanent, or that he should be placed on permanent disability retirement.

{9} Following the submission of the report of the hearing officer, the Committee held a hearing on September 13, 1995, and denied Appellant's claim. Appellant pursued a further administrative appeal to the Board. On August 29, 1996, after reviewing the record, the Board denied Appellant's claim. Appellant then filed an appeal to the district court pursuant to NMSA 1978, § 10–11–120 (1987). On November 21, 1997, the district court affirmed the decision of the Board.

The judgment entered by the district court stated in applicable part:

2. The Board applied the correct legal standard, that is, whether appellant is totally physically or mentally incapacitated for any gainful employment that is commensurate with his background, age, education, experience and any new skills or training he may have acquired after terminating his employment or incurring the disability. NMSA 1978, §§ 10–11–10.1(C)(2)(a), 10–11–10.1(O)(2) (Repl. Pamp.1995).

3. Appellant's expert determined that he could work as a security guard, security dispatcher or motor vehicle inspector. Since incurring his disability, appellant has in fact worked as a security guard.

4. The Board has a reasonable basis for finding these lines of work are commensurate with appellant's background, age and experience.

## STANDARD OF REVIEW

{10} Appeals from decisions of the Board denying disability retirement benefits are reviewed on the record made before the Board. *See* § 10–11–120(B). The decision of the Board is binding on appeal "unless the district court finds the decision of the retirement board to be unlawful, arbitrary or capricious or not supported by substantial evidence on the entire record...." *Id.* The burden of showing that a claimant is entitled to disability benefits rests upon a claimant. *Cf. Bank of Santa Fe v. Petty*, 116 N.M. 761, 765, 867 P.2d 431, 435 (Ct.App.1993) (party asserting affirmative issue has burden of proof on that claim).

## DETERMINATION OF DISABILITY

{11} We jointly discuss each of the issues raised by Appellant on appeal. Appellant argues that the Board erred in denying his claim for disability benefits and misapplied the applicable legal standard in reviewing his claim. He also asserts that the Board failed to consider relevant evidence concerning the extent of his disability and need for vocational rehabilitation.

{12} The statute in effect when Appellant became disabled was NMSA 1978, § 10–11–10 (1987). In 1993, after Appellant was terminated from further receipt of PERA disability benefits, the Legislature repealed Section 10–11–10 and replaced it with NMSA 1978, § 10–11–10.1 (1993). The parties concur that because Appellant reapplied for disability benefits in 1995, the proper statute for evaluating Appellant's disability claim is Section 10–11–10.1, which was the statute in effect at the time of his reapplication for disability benefits. We agree.

{13} Section 10–11–10.1(A) created a Disability Review Committee, which replaced the medical committee provided in former Section 10–11–10(B). Under Section 10–11–10.1(A), the Committee is required to be comprised of "at least three but not more than five retirement board members and at least one physician licensed in New Mexico appointed by the retirement board." The Committee is required to "review all applications for disability retirement, review reports required under this section and approve or deny applications for disability retirement." *Id.*

{14} Section 10–11–10.1(C)(2) provides:

C. The disability review committee shall review applications for disability retirement to determine whether:

. . . .

(2) if the member is not a currently employed, contributing employee of an affiliated public employer:

(a) the member is mentally or physically totally incapacitated for any *gainful employment;* and

(b) the incapacity is likely to be permanent. [Emphasis added.]

{15} The Legislature, in enacting Section 10–11–10.1, also included in Subsection F language stating that "[t]he state disability retirement pension shall be discontinued if the disability review committee finds that the disability retired member is capable of any gainful employment." Subsection O(2) of Section 10–11–10.1 further provides:

O. For the purposes of this section, the following definitions apply:

. . . .

(2) "gainful employment" means remunerative employment or self-employment *that is commensurate with the applicant's background, age, education, experience and any new skills or training the applicant may have acquired after terminating public employment or incurring the disability* [.] [Emphasis added.]

{16} Appellant argues that the district court erred in upholding the Board's decision to deny his application for retirement disability benefits because it found he could work as a security guard, security dispatcher or motor vehicle inspector. Appellant argues that the part-time or seasonal work he performed and work as a security guard, security dispatcher, and motor vehicle inspector do not constitute "gainful employment" within the meaning of Section 10–11–10.1(O)(2). He contends such work does not constitute "gainful employment" because it is not "*commensurate* " with the type of work he was performing when he became disabled, considering his background, age, education, experience, and any skills he may have acquired after becoming disabled. He asserts that the nature of such work necessarily relegated him to employment that essentially was part-time, seasonal or paid only minimum wages. For example, he argues that his post-injury work as a security guard is not sufficiently similar to his former occupation because his salary is lower and involves fewer job responsibilities. He argues that the term "commensurate" contained in Section 10–11–10.1(O)(2) necessitates that the work he is able to perform be an "equal match" for work for which he is fitted.

{17} In contrast, the Board asserts that evidence was presented at the administrative hearing that Appellant could perform certain types of jobs, such as a police inspector, private investigator, deputy sheriff, motor vehicle inspector, exhibit-display representative, dispatcher, or security guard. The Board contends that such work has been shown to come within the meaning of "gainful employment" as defined in Section 10–11–10.1(O)(2) and that the statute does not require that Appellant's level of job responsibility and pay be the same as or equal to his former job as a law enforcement officer;

thus, it contends that Appellant is presently capable of obtaining "gainful employment."

{18} The parties on appeal focus on their disparate interpretations of the term "gainful employment" as defined in Section 10–11–10.1(O)(2). In determining whether the Board and the district court correctly applied the statutory criteria for evaluating Appellant's disability claim, we examine the provisions of Section 10–11–10.1. The interpretation of this statute is a question of law that we review de novo. *See Cox v. Municipal Boundary Comm'n,* 120 N.M. 703, 705, 905 P.2d 741, 743 (Ct.App.1995).

{19} In ascertaining whether a claimant who is a public employee currently has met his or her burden of initially establishing a compensable disability, the relevant inquiry is whether the claimant satisfies the criteria of public employee membership and whether the claimant is mentally or physically totally disabled for "continued employment with an affiliated public employer [and] the incapacity is likely to be permanent[.]" Section 10–11–10.1(C)(1)(a), (b). When, however, a claimant is not a currently employed member of an affiliated public employer and he or she applies for disability benefits, the principal focus is upon whether the claimant "is mentally or physically totally incapacitated for any gainful employment [and] the incapacity is likely to be permanent." Section 10–11–10.1(C)(2)(a), (b).

■ {20} "Gainful employment" means work "commensurate with the applicant's background, age, education, experience and ... skills[.]" Section 10–11–10.1(O)(2). Implicit in this statutory definition is that the compensation from such work be commensurate with what could be earned by a non-disabled person with the applicant's skills. We agree with the Board that a claimant may be capable of obtaining "gainful employment" even though the work the claimant is able to perform does not have the same duties or level of responsibility as his or her former job. We also agree with the Board that commensurate does not mean "equal to," as Appellant urges. Gainful employment which is commensurate, however, does not include any employment, no matter how nominal or temporary, or employment which

results in payment of a nominal sum or mere pittance, without any significant correlation to the compensation the claimant was receiving at the time of his or her disability, or work that the claimant is trained to perform. The term "commensurate" indicates employment whose compensation approximates to a substantial degree what the claimant was able to earn when he or she was disabled. *Cf. Western Cultural Resource Management, Inc. v. Krull,* 782 P.2d 870, 872 (Colo.Ct.App. 1989) (" 'Suitable gainful employment' [for rehabilitation purposes] means employment which is reasonably attainable and offers an opportunity to restore the injured worker to employment with the employee's qualifications, including but not limited to the employee's age, education, previous work history, interests, and skills." (emphasis omitted)). Whether the work a claimant is able to perform and to be compensated for is "commensurate" is a factual question, taking into consideration the claimant's background, age, education, experience, and skills. *Cf. Torix v. Ball Corp.,* 862 F.2d 1428, 1430 (10th Cir. 1988) (" 'Permanent disability is a question of fact that depends upon all the circumstances of a particular case.' " (quoting *Helms v. Monsanto Co.,* 728 F.2d 1416, 1420 (11th Cir.1984))).

■ {21} Appellant asserts that the Board failed to consider relevant vocational evidence presented by him and made no findings concerning whether the work was equal to the pre-injury work he was capable of performing when he became disabled. These omissions, he contends, were contrary to the definition of disability, as used in Section 10–11–10.1, and rendered the Board's decision arbitrary and capricious. An administrative decision may be found to be arbitrary and capricious if, when viewed in the light of the whole record, it is unreasonable or does not have a rational basis. *See Perkins v. Department of Human Servs.,* 106 N.M. 651, 655, 748 P.2d 24, 28 (Ct.App.1987).

{22} Appellant is correct that the findings of fact and conclusions of law adopted by the Board fail to determine whether the work Appellant was found capable of performing was commensurate in terms of salary or remuneration with the work he was performing

at the time of his disability or work which he would be able to perform, absent his disability, considering his background, age, education, experience, skills, or training. Appellant presented evidence that he was paid as a deputy sheriff at a rate of approximately $12 to $14 per hour with fringe benefits, and, in contrast, his salary for work as a security guard was barely half of that amount, at a rate of $6.45 per hour, and did not include fringe benefits.

{23} Gainful employment does not mean the Board may deny a claimant's application by showing that the claimant can perform some type of work and obtain some payment, no matter what the amount. Such interpretation effectively eliminates the term "commensurate" from the statute. In order to ascertain whether a claimant is totally incapacitated for "any gainful employment" within the meaning of Section 10–11–10.1(C)(2), the Board must apply a two-part test. First, the Board, as fact finder, must determine whether the claimant is capable of *performing any remunerative employment that is commensurate* with his or her background, age, education, experience, and skills. This determination necessarily requires the Board to consider the claimant's present earning capacity. Second, the Board must determine whether the incapacity sustained by the claimant is likely to be permanent.

{24} We find that the Board failed to comply with the requirements of Section 10–11–10.1 in evaluating Appellant's reapplication for disability benefits because it failed to factually determine whether the work he was able to perform is substantially "commensurate" in terms of remuneration with the work he was performing at the time of his disability or would have been capable of performing, absent his disability. Accordingly, we remand for the adoption of additional findings of fact and conclusions of law and redetermination of Appellant's reapplication for disability benefits, consistent with the provisions of Section 10–11–10.1(O)(2) and the matters discussed herein. Specifically, the Board shall examine whether Appellant is capable of obtaining any gainful employment that is commensurate with his background, age, education, experience, and skills. This examination includes consideration of the wages attendant to Appellant's job prior to his disability and the potential jobs Appellant would be capable of performing, absent his disability.

*CONCLUSION*

{25} For the reasons discussed herein, the cause is remanded to the Board for the adoption of additional findings of fact and conclusions of law and adoption of an amended decision in conformity herewith.

{26} IT IS SO ORDERED.

HARTZ, C.J., and FLORES, J., concur.