**Certiorari Denied, August 4, 2015, No. 35,390**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2015-NMCA-079**

**Filing Date: May 4, 2015**

**Docket No. 33,599**

**PATRICIA VIGIL,**

    **Petitioner-Appellant,**

**v.**

**THE PUBLIC EMPLOYEES**
**RETIREMENT BOARD,**

    **Respondent-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Raymond Z. Ortiz, District Judge**

The Hemphill Firm, P.C.
Linda G. Hemphill
Santa Fe, NM

for Appellant

Robles, Rael & Anaya, P.C.
Charles Rennick
Santa Fe, NM

for Appellee

**OPINION**

**FRY, Judge.**

**{1}** In this case we review a decision of the Public Employees Retirement Board (the Board) denying duty-related disability retirement benefits to Petitioner-Appellant Patricia Vigil. The parties do not dispute that Ms. Vigil is disabled and that her disability was "solely and exclusively" a result of her work. The dispute concerns whether a pre-existing condition

1

was "a significant contributing factor material to the disability." 2.80.1000.7(E) NMAC (9/30/2010). While a hearing officer recommended finding that Ms. Vigil had established by a preponderance of evidence that no pre-existing condition significantly contributed to her disability, the Board did not accept that recommended finding. Instead, without reviewing the transcript of the evidentiary hearing, the Board entered additional, contrary findings, concluded that Ms. Vigil had failed to satisfy her burden, and denied her application for benefits. On appeal, the district court affirmed. We granted Ms. Vigil's petition for a writ of certiorari and hold that the Board's decision was arbitrary and capricious. We therefore reverse.

## BACKGROUND

### First Application for Disability Retirement Benefits

{2}     Ms. Vigil, who was employed as a recreational therapist with the New Mexico Behavioral Health Institute in Las Vegas, New Mexico, submitted an application to the Public Employees Retirement Association (PERA) for disability retirement benefits in April 2011. In the application, she alleged that she was being treated badly at work as a result of a grievance she had filed and that she was experiencing depression and other symptoms as a consequence. She also submitted an examining physician's form statement in support of her application, which was completed by psychiatrist Jasmin Breitung, M.D. In this statement, Dr. Breitung diagnosed Ms. Vigil as having major depressive disorder, recurrent. Dr. Breitung checked "Yes" on the form in response to the question, "Do you consider this disability to have occurred as the result of causes arising, solely and exclusively out of and in the course of the claimant's employment?" Dr. Breitung then wrote, "The claimant's employment is largely responsible but not solely, since we cannot discount genetic factors. This may not have occurred if the stress at work had not."

{3}     PERA's consulting psychiatrist, Dr. Douglas Puryear, reviewed Ms. Vigil's application and Dr. Brietung's statement and recommended that Ms. Vigil be awarded one year of non-duty disability. He recommended non-duty benefits because "this is a recurrent condition" and the stressors at work "[were] not the sole and exclusive cause and[,] therefore[,] this cannot be a duty-related disability." PERA's disability review committee met and agreed with Dr. Puryear's recommendation, whereupon the committee notified Ms. Vigil that it was recommending non-duty disability benefits "because [she] did not establish to the satisfaction of the [c]ommittee that [her] disability [was] the 'natural and proximate result of causes arising solely and exclusively out of and in the course of' [her] performance of [her] job duties." Because Ms. Vigil did not terminate her employment within forty-five days of the date of the committee's letter, her application file was closed.

### Second Application for Disability Retirement Benefits

{4}     Ms. Vigil again submitted an application for disability retirement benefits in September 2011, which was virtually the same as her prior application. Dr. Breitung filled

out another examining physician's form statement, in which she again indicated that Ms. Vigil's disability was the result of her employment. Dr. Breitung further stated, "The stress at work triggered her depression and anxiety though it is not the sole cause." Ms. Vigil also submitted a letter from her therapist, Lela M. McNicol, LISW, which stated that Ms. Vigil had been treated for PTSD and depression. Once again, Dr. Puryear reviewed the application on behalf of PERA and recommended non-duty disability benefits because of Dr. Breitung's statement "that the work is not the sole cause of her psychiatric problems[.]" The disability review committee again recommended non-duty benefits, and Ms. Vigil appealed.

**{5}** PERA apparently allowed Ms. Vigil to supplement her application, and she submitted a letter from Dr. Breitung, which stated, "Even though [Ms. Vigil] has had a pre[-]existing prior depressive episode in 2006[,] that episode had completely resolved. This recurrent episode of [2011] is a direct result of stressors from her job. . . . As a matter of fact[,] her prior depression was also triggered by work[,] but that is not under discussion here." Dr. Breitung's letter concluded, "Any pre[-]existing condition was not a significant factor in causing her disability." Dr. Puryear reviewed this letter and changed his recommendation to duty-related disability benefits. He stated, "Since the statute requires that pre-existing conditions were not a substantial contributor and that the problems would not have occurred without the stresses of the job, and that the job is the sole and exclusive cause of the current problems, based on the updated information from the psychiatrist[,] it appears that [Ms. Vigil] would at this time meet the requirements for a duty-related disability." Despite Dr. Puryear's change of mind, the disability review committee met again and recommended non-duty benefits.

**Administrative Appeal**

**{6}** Ms. Vigil's appeal proceeded to an evidentiary hearing before a hearing officer. Dr. Breitung testified and explained her written notations on the two examining physician forms that had been submitted with Ms. Vigil's two applications for retirement disability benefits. With respect to the first form, on which Dr. Breitung had stated that Ms. Vigil's employment "[was] largely responsible [for her disability] but not solely," Dr. Breitung explained that she meant this to be a "generic statement" because "as a psychiatrist, we generally believe that there are some genetic factors even if we can't prove it." As for her written comment that Ms. Vigil's "[p]rior history of a depressive episode put her more at risk for further depressive episodes," Dr. Breitung testified that this related to the depressive episode Ms. Vigil experienced in 2006 or 2007 and that the prior episode was also the result of work stressors. She went on to testify that the prior episode had "resolved completely" by the time Ms. Vigil came to see her in 2011.

**{7}** With respect to the second form prepared by Dr. Breitung and submitted with Ms. Vigil's second application, Dr. Breitung explained her statement that "[t]he stress at work triggered her depression [and] anxiety though it is not the sole cause." Again, Dr. Breitung testified that she meant that Ms. Vigil "had genetic factors." She stated that the form did not ask whether any pre-existing condition was a significant factor in Ms. Vigil's disability. Dr.

Breitung further testified that she later became aware that PERA was denying Ms. Vigil duty-related disability benefits because of the forms Dr. Breitung had prepared. After being made aware of this fact and of the regulatory standards applicable to duty-related disability, Dr. Breitung wrote a letter to PERA to clarify her previous statements, in which she stated that "[a]ny pre[-] existing condition was not a significant factor in causing [Ms. Vigil's] disability." Dr. Breitung testified that she stands by the opinion stated in that letter. She opined that Ms. Vigil's work "was so substantial a factor in the disability that she would not have become disabled without it." She further testified that nothing in her treatment, diagnosis, or evaluation of Ms. Vigil led her to believe "that she had any pre[-] existing condition that was a significant factor in her disability."

{8}     Dr. Breitung testified regarding several past incidents Ms. Vigil mentioned in her therapy sessions, including a panic attack Ms. Vigil had when she was in her twenties; her father's physical discipline of her when she was a child; her boyfriend's alleged affair in 2006 or 2007; the physical abuse by a former partner, who was the father of her first child; the fact that she has three freezers full of food (purportedly because of food insecurity she experienced as a child); and her brother's death in 2011. Dr. Breitung concluded that, for a variety of reasons, none of these incidents constituted a pre-existing condition that significantly contributed to Ms. Vigil's disability.

{9}     Ms. Vigil's social worker-therapist, Ms. McNicol, also testified at the hearing. Ms. McNicol treated Ms. Vigil during her first depressive episode in 2007 and opined that all of her reported problems then were work-related. During this time period, Ms. Vigil received a letter saying that her boyfriend was having an affair, but Ms. McNicol thought Ms. Vigil was more focused on who sent the letter than on the letter's allegations because her relationship with her boyfriend was going well. After a mediation at work took place, Ms. Vigil expressed uncertainty about continuing counseling, and she did not return to therapy with Ms. McNicol until early 2011.

{10}    Regarding the therapy in 2011, Ms. McNicol testified that any childhood issues Ms. Vigil may have had were not a significant factor in causing her disabling depression or anxiety. Ms. Vigil viewed her upbringing as fairly normal, although she mentioned an incident where her father hit her. However, this abuse was not recurrent, and Ms. McNicol opined that Ms. Vigil had dealt with her childhood issues prior to treatment. While Ms. Vigil's brother died during her treatment with Ms. McNicol in 2011, Ms. McNicol testified that Ms. Vigil experienced normal bereavement that did not contribute to her depression. She concluded that Ms. Vigil's work was so substantial a factor in her disability that she would not have become disabled without it and that no pre-existing condition was a significant factor in her disability.

{11}    The final witness at the hearing was Dr. Puryear, the psychiatrist who had reviewed Ms. Vigil's disability applications for PERA. Dr. Puryear read into the record his written report, in which he discussed his prior recommendations of non-duty disability benefits. He stated that he gave significant weight to Dr. Breitung's statements in her form reports that

4

Ms. Vigil's depression was not solely caused by stressors at work and that she had a history of depression. He explained that he changed his recommendation to duty-related disability benefits after receiving Dr. Breitung's letter in which she stated that Ms. Vigil's job was the sole and exclusive cause of her disability and that the prior depression had completely resolved.

**{12}**     Dr. Puryear then explained that after he recommended duty-related benefits, he reviewed "voluminous material," apparently in preparing for the appeal hearing, including the notes of Dr. Breitung and Ms. McNicol. This material caused Dr. Puryear to consider "two possible scenarios that could be supported by the evidence[.]" Those scenarios were:

> A.     [Ms. Vigil] had childhood PTSD and continued to suffer from some symptoms, and this was exacerbated by her work stress, as well as somewhat by her brother's death and problems with her boyfriend. She appears to have developed a chronic adjustment disorder and exacerbation of her PTSD symptoms.

> B.     [Ms. Vigil] was doing fine until work problems arose and caused a chronic adjustment disorder probably with features of a major depression, with probable revival of her previous PTSD symptoms.

**{13}**     He went on to opine:

> In either scenario, her problems would have resulted from:

> 1.     her stresses, stresses largely but probably not solely from work[;]

> 2.     a vulnerability and a predisposition to symptoms because of her childhood abuse and presumed PTSD[;]

> 3.     her way of experiencing the work problems which was colored by childhood—feeling powerless, degraded, disregarded[;]

> 4.     and from the interaction of her compulsive personality type with her work situation.

**{14}**     He then concluded:

> [T]he first scenario was most supported by the evidence[,] which seemed to belie the second, but that in either scenario[,] the job was not the sole and exclusive cause of her problems. It seemed that the work situation was bad, but that absent her personality type and possible disorder, her childhood abuse and presumed PTSD, and her tendency to depression, she probably would have . . . experienced stress but not likely [to] have developed

5

symptoms, especially of this extreme severity.

**{15}** Dr. Puryear elaborated on Ms. Vigil's "personality type," which he characterized as an "obsessive-compulsive" personality "style" that he would guess everyone at the appeal hearing, including himself, would "probably have." By this he meant a style that was "detail oriented, conscientious, responsible, mostly honest, scrupulous, meticulous, rigid, judgmental and critical, and particularly sensitive to issues of power and of injustice." This personality style would mean that Ms. Vigil, in a "lousy work environment[,] is going to have really severe difficulty coping with all the stuff that seemed irresponsible and immoral[.]" It would also mean that she would "have more difficulty coping with . . . stress[.]"

**{16}** The hearing officer prepared a recommended decision, which included recommended findings of fact and conclusions of law. He noted that Ms. Vigil and PERA agreed that Ms. Vigil is disabled and that her disability was solely and exclusively the result of her work but that they disputed whether a pre-existing condition was a significant contributing factor. The hearing officer rejected Dr. Puryear's opinion that childhood PTSD contributed to her current disability because "[t]he medical evidence in this case does not indicate that [Ms. Vigil] was diagnosed with PTSD as a result of childhood trauma or abuse." While Ms. McNicol diagnosed PTSD, she testified that "it was a result of stressors at work" and opined that "childhood trauma was not a pre[-]existing condition significant[ly] contributing to [Ms. Vigil's] work-related disability." The hearing officer found that "Dr. Breitung did not diagnose PTSD from childhood trauma" and testified that any "PTSD symptoms possibly related to childhood trauma [were] not a pre-existing condition that [were] a significant contributing factor material to the disability."

**{17}** The hearing officer went on to find that "Dr. Puryear appears to be discounting PTSD as a correct diagnosis while at the same time using PTSD (or at least PTSD symptoms) as a pre[-]existing condition in his analysis."

**{18}** He further found:

> Dr. Puryear's testimony appears to be, in certain instances, based on speculation and his own theories. Dr. Puryear's theory that [Ms. Vigil] had either PTSD or symptoms of PTSD from childhood abuse, and that this was a pre[-]existing condition significantly contributing to [Ms. Vigil's] 2011 depression and adjustment disorder, is contrary to the testimony of [Ms. Vigil's] treating physician and therapist. His testimony that [Ms. Vigil] has some obsessive-compulsive disorder, or tendencies on that spectrum, is contrary to the testimony of her treating psychiatrist, and Dr. Puryear testified it would be incorrect for him to diagnose this alleged disorder.

**{19}** The hearing officer also found that "[Ms. Vigil's] 2007 depressive episode was work-related. Dr. Breitung's testimony that the prior depressive episode resolved prior to 2011 is

not inconsistent with the medical evidence."

**{20}** In summary, the hearing officer found that "greater weight is given to the testimony of the treating physician (and therapist) [than to Dr. Puryear's testimony] because her opinion is also supported by medical records and diagnosis."

**{21}** The hearing officer submitted recommended conclusions of law, including the following:

> A preponderance of the evidence of record supports a determination that [Ms. Vigil] is permanently and totally incapacitated for continued employment, and that the disability arose from proximate causes arising solely and exclusively from her job. A preponderance of credible evidence supports a finding that no pre[-]existing condition was a significant contributing factor material to [Ms. Vigil's] disability. . . . [Ms. Vigil] is entitled to duty disability at this time, and her [a]ppeal should be **granted**.

**{22}** The Board filed an order stating that it had reviewed the hearing officer's recommended decision, PERA's written exceptions to the decision, and the hearing officer's response. The order then stated:

> 5. [Ms. Vigil] received medicine and social work therapy for a 2007 depressive episode.
>
> 6. [Ms. Vigil] chose to stop taking the medicine and attending social work therapy. . . .
>
> 7. PERA's expert psychiatrist [(Dr. Puryear)] concluded that [Ms. Vigil's] 2007 depressive episode was not resolved. . . .
>
> 8. [Ms. Vigil] has failed to satisfy her burden and her appeal for "duty" disability retirement benefits is DENIED in accordance with PERA statutes and rules.

**{23}** Ms. Vigil appealed the Board's decision to district court, which affirmed. This Court granted certiorari.

## DISCUSSION

### Standard of Review

**{24}** We review a decision of the Board "under the same standard of review used by the district court while also determining whether the district court erred in its review." *Paule v. Santa Fe Cnty. Bd. of Cnty. Comm'rs*, 2005-NMSC-021, ¶ 26, 138 N.M. 82, 117 P.3d 240.

7

Under this standard, we determine "whether the [Board] acted fraudulently, arbitrarily or capriciously; whether the [Board]'s decision is supported by substantial evidence; or whether the [Board] acted in accordance with the law." *Id.*; *see* NMSA 1978, § 39-3-1.1(D) (1999). In this case, we conclude that the Board's decision was arbitrary and capricious.

**The Board's Decision Was Arbitrary and Capricious**

**{25}** We begin with the legal framework applicable to Ms. Vigil's claim. Under NMSA 1978, Section 10-11-10.1 (2013), the PERA disability review committee may approve disability retirement benefits if it "finds the disability to have been the natural and proximate result of causes arising solely and exclusively out of and in the course of the member's performance of duty with an affiliated public employer." Section 10-11-10.1(B)(4)(b). Regulations define "solely and exclusively" as "[(1)] the member's work is so substantial a factor of the disability that the disability would not have occurred at the time without it and [(2)] a pre-existing condition is not a significant contributing factor material to the disability." 2.80.1000.7(E) NMAC. The parties do not dispute that Ms. Vigil established the first criterion, and the question is therefore whether a pre-existing condition significantly contributed to the disability.

**{26}** In considering whether an administrative decision is arbitrary or capricious, "we review the whole record to ascertain whether there has been unreasoned action without proper consideration or disregard of the facts and circumstances." *Paule*, 2005-NMSC-021, ¶ 30 (internal quotation marks and citation omitted). Put another way, a decision is arbitrary and capricious "if it provides no rational connection between the facts found and the choices made, or entirely omits consideration of relevant factors or important aspects of the problem at hand." *Atlixco Coal. v. Maggiore*, 1998-NMCA-134, ¶ 24, 125 N.M. 786, 965 P.2d 370; *see Johnson v. Pub. Emps. Ret. Bd.*, 1998-NMCA-174, ¶ 21, 126 N.M. 282, 968 P.2d 793 ("An administrative decision may be found to be arbitrary and capricious if, when viewed in the light of the whole record, it is unreasonable or does not have a rational basis."). The decision-making agency may not "select and discuss only that evidence which favors [its] ultimate conclusion or fail to consider an entire line of evidence to the contrary." *Atlixco*, 1998-NMCA-134, ¶ 24.

**{27}** The regulations governing the Board's consideration of disability retirement benefits serve to prevent arbitrary and capricious decision making. They provide that "[t]he [Board] shall approve, disapprove or modify the [hearing officer's] recommended decision, and shall enter a final order concerning the matter being appealed." 2.80.1500.10(D)(7) NMAC (9/30/2010). Where, as here, "the [B]oard wishes to modify the proposed findings of fact, it may do so only after review of the record before the hearing officer. The [B]oard shall provide a reasoned basis for changing the hearing officer's recommendation." *Id.*

**{28}** In this case, the Board's final order recited that it had reviewed the hearing officer's recommended decision, PERA's exceptions to the decision, and the hearing officer's response to the exceptions. Notably, the order did not state that the Board reviewed the

8

record before the hearing officer, as required by regulation. Yet, despite having failed to review the record, the Board entered new findings of fact that contradicted the hearing officer's recommended findings. It entered new findings that (1) Ms. Vigil was treated with medicine and therapy for a depressive episode in 2007; (2) she "chose to stop taking the medicine and attending the social work therapy[;]" and (3) Dr. Puryear "concluded that [Ms. Vigil's] 2007 depressive episode was not resolved." Based on these three new findings, while implicitly disapproving of all of the hearing officer's twenty-one findings, the Board concluded that Ms. Vigil "failed to satisfy her burden" and denied her claim for duty-related disability benefits.

**{29}** The Board's denial of benefits was arbitrary and capricious for two reasons. First, it was made in violation of the applicable regulations, which require the Board both to review the entire record before it can modify the hearing officer's recommended findings and to "provide a reasoned basis for changing the hearing officer's recommendation." 2.80.1500.10(D)(7) NMAC. The Board's order said nothing about reviewing the record, and it offered no explanation, much less a reasoned one, for why it modified the hearing officer's completely contrary findings.[1] Second, the Board's denial of benefits "entirely omit[ted] consideration of relevant factors or important aspects of the problem at hand." *Atlixco*, 1998-NMCA-134, ¶ 24.

**{30}** The hearing officer's findings included the following:

> [Dr. Breitung] also indicated that [Ms. Vigil's] prior depressive episode in 2007 was a result of work stressors, was a milder depression, and that it had resolved prior to the time [Ms. Vigil] came to see her in 2011.
>
> . . . .
>
> [Ms. McNicol] first saw [Ms. Vigil] June 25, 2007, . . . [when Ms. Vigil] sought treatment for excessive stress at work. . . . [Ms. Vigil] apparently went to a work mediation and then indicated she was unsure about continuing counseling. . . . Ms. McNicol had no reason to believe [Ms. Vigil] continued to suffer from depression, anxiety or PTSD after 2007 and before she returned to therapy in February 2011.
>
> . . . .

---

[1] While Ms. Vigil did not raise this point in her briefing, we nonetheless address it because it is in the general public interest to ensure that the Board acts in compliance with its own regulations and bases decisions that are contrary to the recommendations of its hearing officers on the evidentiary record. Rule 12-216(B)(1) NMRA (stating that appellate court may, in its discretion, review unpreserved questions involving general public interest).

> Dr. Puryear questioned whether [Ms. Vigil's] 2007 depressive episode was solely caused by work, and he also questioned whether [her] 2007 depressive episode was resolved prior to 2011, although pointing to no specific evidence concluding it was not. . . . Dr. Puryear testified it was "plausible" the depression was resolved because the records show no treatment of [Ms. Vigil] from August 2007 to early 2011.

The hearing officer's recommended findings make no mention of Ms. Vigil's choosing to stop medication and therapy in 2007, as found by the Board.

**{31}** Thus, the Board's finding that Ms. Vigil "chose to stop taking the medicine and attending social work therapy" is completely contrary to the hearing officer's recommended findings, and the Board offered no explanation for this contradiction other than a bare reference to an exhibit comprising sixty-eight pages of Ms. McNicol's office notes, most of which were hand-written and difficult to decipher. More important, Ms. McNicol herself contradicted this finding with her testimony that she had no reason to believe that Ms. Vigil's depression continued during the time she was not in therapy between 2007 and 2011.

**{32}** In making its new findings of fact, the Board "select[ed] and discuss[ed] only that evidence which favor[ed its] ultimate conclusion"—i.e., Dr. Puryear's testimony—and it "fail[ed] to consider an entire line of evidence to the contrary." *Atlixco*, 1998-NMCA-134, ¶ 24. This is, by definition, conduct that is arbitrary and capricious. *Id.*

**{33}** Moreover, the Board's new findings had no rational basis in light of the whole record. *See Johnson*, 1998-NMCA-174, ¶ 21 ("An administrative decision may be found to be arbitrary and capricious if, when viewed in the light of the whole record, it is unreasonable or does not have a rational basis."). Dr. Puryear himself did not rely on the 2007 depressive episode for his opinion supporting denial of benefits to Ms. Vigil. Instead, he relied on two "scenarios," the more likely of which was that Ms. Vigil suffered from "childhood PTSD . . . exacerbated by her work stress, as well as somewhat by her brother's death and problems with her boyfriend." Yet both Ms. Vigil's treating psychiatrist and her treating therapist testified that, in childhood, Ms. Vigil was disciplined by her father rather than abused and that neither her brother's death nor any alleged problems with her boyfriend constituted pre-existing conditions that significantly contributed to her disability. Dr. Breitung rejected a diagnosis of PTSD, and while therapist Ms. McNicol diagnosed PTSD, she attributed the disorder to stressors at work.

**{34}** Dr. Puryear also opined that, while Ms. Vigil's "work situation was bad, . . . absent her personality type, . . . presumed PTSD, and her tendency to depression," she likely would not have experienced the severe symptoms that she did. Because Dr. Breitung and Ms. McNicol testified either that Ms. Vigil did not have PTSD or that her PTSD was caused by her work, and because they agreed that her only previous depressive episode had completely resolved, the only remaining potential "pre-existing condition," according to Dr. Puryear, was Ms. Vigil's "personality type." And because Dr. Puryear described this personality type

as one "probably" shared by every person in attendance at the appeal hearing, we can surmise that, in Dr. Puryear's view, no one with a college education could ever qualify for PERA duty-related disability retirement based on a mental health disorder.

**{35}** In summary, the Board violated its own regulations by failing to review the record before the hearing officer and by failing to provide a reasoned basis for its new findings of fact. In addition, the Board's decision, "when viewed in the light of the whole record, . . . [was] unreasonable [and did] not have a rational basis." *Johnson*, 1998-NMCA-174, ¶ 21. The decision was therefore arbitrary and capricious and must be reversed.

**CONCLUSION**

**{36}** For the foregoing reasons, we reverse the Board's order denying duty-related disability retirement benefits to Ms. Vigil, and we reverse the district court's judgment affirming the Board's order. This matter is remanded to the Board with instructions to implement the hearing officer's proposed decision.

**{37}    IT IS SO ORDERED.**

 

_____
                      **CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**M. MONICA ZAMORA, Judge**

11